**WESTON & McELVAIN LLP**
RICHARD C. WESTON (State Bar No. 126491)
RICHARD C. REY II (State Bar No. 193212)
888 West Sixth Street, 15th Floor
Los Angeles, California 90017
Telephone    (213) 596-8000
Facsimile    (213) 596-8039
E-mail       rweston@wmattorneys.com
             rrey@wmattorneys.com

Attorneys for Defendant THE BURLINGTON
INSURANCE COMPANY (erroneously sued
as BURLINGTON INSURANCE COMPANY)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY WOLFES, | CASE NO. C0704657 JW |
| Plaintiff, | **DEFENDANT THE BURLINGTON** |
| vs. | **INSURANCE COMPANY'S** |
| | **NOTICE OF MOTION AND** |
| BURLINGTON INSURANCE | **MOTION TO DISMISS** |
| COMPANY AND DOES 1 to 25, | **COMPLAINT AS IMPROPERLY** |
| inclusive | **DUPLICATIVE; MEMORANDUM** |
| | **OF POINTS AND AUTHORITIES** |
| Defendant, | **ATTACHED HERETO** |
| | |
| | Date:    January 28, 2008 |
| | Time:    9:00 a.m. |
| | Ctrm:    8 |

TO THE COURT, PLAINTIFF AND HER COUNSEL OF RECORD HEREIN:

PLEASE TAKE NOTICE that on January 28, 2008 at 9:00 a.m., or as soon

thereafter as the matter can be heard in Courtroom 5 of the above-entitled court,

located at 280 First Street, 4th Floor, San Jose, California 95418, before the

Honorable James Ware, Defendant THE BURLINGTON INSURANCE

1   COMPANY ("Defendant") will move this Court for dismissal of the entire

2   Complaint filed by Plaintiff JENNY WOLFES ("Plaintiff"), with prejudice, on the

3   ground that it is improperly duplicative of another lawsuit currently pending in this

4   Court before the Honorable Ronald M. Whyte.  Burlington alternatively moves this

5   Court for dismissal of Plaintiff's Second Cause of Action for Breach of the Implied

6   Covenant of Good Faith and Fair Dealing, Third Cause of Action Intentional

7   Infliction of Emotional Distress and Fourth Cause of Action for Negligent Infliction

8   of Emotional Distress on the ground that each fail to state a claim upon which relief

9   can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

10          This Motion is based upon the attached Memorandum of Points &

11  Authorities, the Complaint, Defendant's Request for Judicial Notice the Court's

12  own file in this action and any further argument as may be considered by the Court

13  in ruling on this Motion.

14

15  DATED: November 7, 2007              WESTON & McELVAIN LLP

16

17

18                                      By:_____

19                                           Richard C. Rey II

20                                           Richard C. Weston

21                                      Attorneys for Defendant THE

22                                      BURLINGTON INSURANCE COMPANY

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

By way of this Motion, Defendant The Burlington Insurance Company ("Burlington") seeks dismissal of the Complaint filed Plaintiff Jenny Wolfes ("Plaintiff" or "Wolfes"), with prejudice, on the ground that it is duplicative with a lawsuit previously filed by the Plaintiff and currently pending in this Court before the Honorable Ronald M. Whyte, Case No. C07-00696 RMW.  To be clear, Plaintiff filed an insurance coverage action against Burlington in February 2007 and then filed a second coverage action – the case at bar -- against Burlington in September 2007. Both actions, however, are currently in the Northern District and both arise out of the same nucleus of facts: (1) Burlington issued a general liability policy; (2) a suit arising out of a business dispute was filed against Plaintiff in Santa Clara County Superior Court; (3) Plaintiff tender the defense of this matter to Burlington; (4) Burlington refused to provide Plaintiff with a defense; and (5) Plaintiff claims this denial is improper and brought suit -- twice.  Recently, the Ninth Circuit along with several District Courts in California have held that a lawsuit which has been found to be "duplicative" of a previously filed lawsuit is subject to dismissal.[1]

Dismissal is particularly warranted in this case as Plaintiff has filed the second suit in violation of the Northern District Court Local Rule 3-12, which requires her to file a Notice of Related Case(s).  In addition, written discovery in the earlier action has concluded.  But more egregious is the fact that Plaintiff filed the instant suit for an improper purpose.  Plaintiff's counsel, Mr. Gerald Emanuel, admitted that the second lawsuit was filed only because he knew Plaintiff would be unable to obtain leave to amend the first lawsuit.

Even if the Court does not grant Burlington's Motion on the above ground, Plaintiff's Second Cause of Action for Breach of the Implied Covenant of Good

---

[1]  Adam v. State of Cal. Dept. of Health Servs., 487 F.3d 684, 688 (9th Cir. May 7, 2007).

1  Faith and Fair Dealing and Third Cause of Action Intentional Infliction of

2  Emotional Distress should be dismissed for the simple reason that they are based on

3  nothing more than conclusory allegations that contain absolutely no factual support.

4  Plaintiff's Fourth Cause of Action for Negligent Infliction of Emotional Distress

5  should also be dismissed as California does not generally recognize claims for

6  negligence against insurers.  Even if it did, this claim contains no allegations

7  describing Burlington's duty to Plaintiff or its breach of that duty.

8  **II.    FACTUAL BACKGROUND.**

9  The facts relevant to this Motion to Dismiss involve three separate lawsuits,

10  including: (1) the Underlying Action filed by Big Sky Entertainment III, Inc. against

11  Plaintiff; (2) the First Coverage Action filed by Wolfes against Burlington in Santa

12  Clara County Superior Court, which was removed to and is currently pending in the

13  United States District Court for the Northern District of California; and (3) a Second

14  Coverage Action, the case at bar, filed by Wolfes against Burlington in United

15  States District Court for the Northern District Court of California.

16  **A.    The Underlying State Court Action**

17  *1.    Big Sky's Complaint Against Wolfes*

18  On August 17, 2004, Plaintiffs Big Sky Entertainment III, Inc., James Edward

19  Pope, William G. Leunis III and Robert Simpson filed an action against Wolfes in

20  the Superior Court of the State of California for the County of Santa Clara, wherein

21  they asserted the following three claims for relief: conversion; breach of fiduciary

22  duty; and interference with prospective economic advantage.  [See Big Sky

23  Complaint attached to Burlington's Request for Judicial Notice ("RJN") as Exhibit

24  No. 1.] [2]

25  The pertinent allegations in the Underlying Action are as follows.  Big Sky

26  Entertainment III, Inc. ("Big Sky") is a California Corporation that also does

27  _____

28  [2] Unless otherwise noted, each of the exhibits relied upon by Burlington in support of this Motion have been attached to its RJN.

1  business as "The Blue Tattoo" restaurant and bar.  [Id. at ¶ 1.]  Wolfes as well as

2  Plaintiffs Pope, Leunis and Simpson were shareholders and directors of Blue Sky.

3  [Id. at ¶¶ 2-7.]

4       On or about July 8, 2004, Big Sky alleges that it entered into a management

5  agreement with a third party to run The Blue Tattoo.  [Id. at ¶ 14.]  Big Sky further

6  alleges that this third party later expressed an interest in buying the restaurant.  [Id.]

7       On July 19, 2004, Mr. Pope advised the board of directors for Blue Sky that

8  the above third party might be willing to purchase Blue Sky's assets for between

9  $300,000 and $350,000.  [Id.]  Big Sky alleges that all directors were in favor of

10  pursuing this opportunity except for Wolfes.  [Id. at ¶¶ 14, 16.]  In fact, Wolfes

11  allegedly stated to Mr. Leunis that she would do "everything in her power" to stop

12  the sale.  [Id. at ¶¶ 15, 17.]  As a result, the directors voted to terminate Wolfes

13  without cause from her employee, officer and director positions with the company.

14  [Id. at ¶ 16.]

15       On July 21, 2004, "[Big Sky] heard from reliable sources" that Wolfes had

16  allegedly made telephone calls to interfere with the sales transaction."  [Id. at ¶ 18.]

17  Big Sky contends that, shortly thereafter, the third party buyer gave notice that it

18  wanted to back out of the purchase and that Big Sky would have to make significant

19  concessions in order to keep it interested.  [Id.]

20       On July 23, 2004, the board of directors conducted a meeting and a resolution

21  was passed to sell to the buyers on the requested terms and conditions.  [Id. at ¶ 19.]

22  Wolfes gave notice that she voted her shares against the resolution and, thereafter,

23  allegedly continued to take actions to disrupt the sale.  [Id. at ¶¶ 19-20.]  According

24  to the complaint in the Underlying Action, she solicited employees to stop working

25  for the company; made accusations about the building; made unauthorized contact

26  with the San Jose Planning Commission and other agencies for the purpose of

27  interfering with the sale; and made demands to review corporate records when it

28  was impossible for Big Sky to comply.  [Id. at ¶ 21.]

In addition, the complaint states that Wolfes stole approximately $15,000 from the cash assets of Big Sky. [Id. at ¶ 10.] Consequently, Big Sky was unable to pay its lease for the restaurant. [Id.]

### 2.    *Leunis' Cross Complaint Against Wolfes*

On or about August 15, 2005, one of the Big Sky shareholders, William Leunis, filed a Cross-Complaint against WOLFES and Pacific Entertainment III, LLC in the above action for a number of contractual related claims, including breach of contract, breach of guarantee contract, indemnity, breach of promissory note, negligent misrepresentation and fraud (The Complaint filed by Big Sky and the Cross-Complaint filed by Leunis shall be collectively referred to as the "Underlying Action"). These claims allegedly arise out of several unpaid loans made by Leunis involving the above Blue Tattoo club as well as another restaurant located in Modesto, California.

### B.    The First Wolfes' Action Against Burlington ("Wolfes I")

On February 2, 2007, Plaintiff filed a separate coverage action against Burlington in the Superior Court of the State of California for the County of Santa Clara ("Wolfes I"). This Complaint contains one claim for Declaratory Relief, in which Plaintiff seeks a declaration that Burlington owes Plaintiff a duty to defend and indemnify her in the Underlying Action. [See Wolfes I Complaint attached as Exhibit No. 2.]

Specifically, Plaintiff alleges that Burlington issued a commercial general liability policy to Big Sky, no. 585BW03318, on or about June 27, 2004 and that she was "an insured under the policy." [Id. at ¶¶ 5-6.] That same day, Plaintiff further alleges that she was served with a complaint in the Underlying Action. [Id. at ¶ 7.] Plaintiff then "tendered the complaint" to Burlington and, pursuant to the policy, allegedly demanded that Burlington defend and indemnify her with respect to the Underlying Action. [Id. at ¶ 8.]

1    Burlington, however declined to do so.  According to the Complaint in

2    Wolfes I, Burlington contends that "Wolfes was not an insured" under the policy,

3    that the statements made by her were not made in her capacity "as an officer,

4    director or employee of Big Sky Entertainment, III" and that no personal injury and

5    advertising injury coverage exists for the causes of action asserted in the Underlying

6    Action.   [Id. at ¶ 9, 11.]  Plaintiff disputes these allegations and, therefore, "desires

7    a judicial determination of her rights under the policy and declaration as to which

8    party's contentions is correct."   [Id. at ¶ 11-12.]

9    On March 2, 2007, Burlington removed this action to United States District

10   Court for the Northern District of California, Case No. C07 00696 RMW, on the

11   basis of diversity jurisdiction.  This case has been assigned to and is currently

12   pending before the Honorable Ronald M. Whyte.  Burlington has filed an Answer to

13   this Complaint, the Court has held a case management conference and written

14   discovery concluded in July 2007.   [See Burlington's Answer and Burlington's

15   Notice of Pre-trial Dates and Procedures Ordered By The Court attached as Exhibit

16   Nos. 3 and 4, respectively.]

17   **C.    The Second Wolfes' Action Against Burlington ("Wolfes II")**

18   In September 2007, Plaintiff retained the law firm of Hinkle, Jachimowicz,

19   Pointer & Emanuel as her new coverage counsel.  Because coverage counsel did not

20   believe a motion for leave to amend would be granted in Wolfes I, Wolfes decided

21   to file a new lawsuit -- the instant action -- against Burlington in United States

22   District Court for the Northern District of California, Case No. C07 04657 PVT,

23   asserting four additional claims based on the same facts: (1) Breach of Contract;

24   (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intentional

25   Infliction of Emotional Distress; and (4) Negligent Infliction of Emotional Distress

26   (hereinafter "Wolfes II"). [See Wolfes II Complaint attached as Exhibit 5.]

27   In Wolfes II, Plaintiff again alleges that Burlington issued a commercial

28   general liability policy to Big Sky, no. 585BW03318, on or about June 27, 2004 and

-7-

1  that she was "an insured under the policy." [Id. at ¶ 5.]  That same day, Plaintiff

2  further alleges that she was served with a complaint in the Underlying Action.  [Id.

3  at ¶ 8.]  Plaintiff then "tendered the complaint" to Burlington and, pursuant to the

4  policy, allegedly demanded that Burlington defend and indemnify her with respect

5  to the Underlying Action.  [Id. at ¶ 10.]  Burlington, however, declined to do so.

6  [Id. at ¶ 11.]

7          Plaintiff contends that Burlington's failure to defend and indemnify was

8  improper because she was an insured under the policy and "there was a potential for

9  liability under the 'Personal injury and Advertising injury' coverage in that it is

10  claimed that Plaintiff made telephone calls to interfere with the sale of the assets of

11  BSE III, and that she made accusations which disrupted the sale."  [Id. at ¶¶ 6, 13A.]

12  Burlington's actions, according to the Complaint, amounts to a breach of its

13  obligations under the Policy, to a breach of the implied covenant of good faith and

14  fair dealing as well as conduct causing "severe emotional distress."  [Id. at ¶¶ 12-13,

15  16 and 30.]

16  **III.    MOTION TO DISMISS LEGAL STANDARD.**

17          Dismissal under FRCP 12(b)(6) is appropriate when it is clear that no relief

18  could be granted under any set of facts that could be proven consistent with the

19  allegations set forth in the complaint. <u>Newman v. Universal Pictures</u>, 813 F.2d

20  1519, 1521-22 (9th Cir. 1987).  The Court must view all allegations in the complaint

21  in the light most favorable to the non-movant and must accept all material

22  allegations – as well as any reasonable inferences to be drawn from them – as true.

23  <u>North Star Int'l. v. Az. Corp. Comm'n.</u>, 720 F.2d 578, 581 (9th Cir. 1983).

24  However, the Court need not assume the truth of the legal conclusions merely

25  because they are cast in the form of factual allegations.  <u>W. Mining Council v. Watt</u>,

26  643 F.2d 618, 624 (9th Cir. 1981).  Moreover, courts will not assume that plaintiffs

27  "can prove facts which [they have] not alleged, or that defendants have violated . . .

28

laws in ways that have not been alleged." <u>Associated General Contractors of Cal. v.</u> <u>Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

## IV.    THE WOLFES II COMPLAINT CONSTITUTES A DUPLICATIVE LAWSUIT THAT SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" <u>Adams v. State of Cal. Dept. of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. May 7, 2007) (quoting <u>Walton v. Eaton Corp.</u>, 563 F.2d 66, 70 (3rd Cir. 1977) (en banc) (<u>cited with approval</u> in <u>Russ v. Standard Ins. Co.</u>, 120 F.3d 988, 990 (9th Cir. 1997).)  Litigants "are required to bring at one time all of the claims against a party or privies" that arise out of the same transaction or event.  <u>Adams</u>, <u>supra</u>, at 693.   The reason for this is "to protect the defendant from being harassed by repetitive actions based on the same claim." <u>Single Chip Systems Corp. v. Intermec</u> <u>IP Corp.</u>, 495 F.Supp.2d 1052, 1058 (S.D. Cal. May 21, 2007) (quoting <u>Clements v.</u> <u>Airport Authority of Washoe County</u>, 69 F.3d 321, 328 (9th Cir. 1995).  Not surprisingly, as a result, district courts have broad discretion to control its docket and exercise that power by imposing sanctions in the form of default or dismissal. <u>Thompson v. Hous. Auth. of City of Los Angeles</u>, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam).

To determine whether a suit is a duplicative and, therefore, subject to dismissal, courts generally apply a test similar to that for "claim preclusion." <u>Adams</u>, <u>supra</u>, 688-689.  Specifically, they will examine "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." <u>Id.</u>; <u>Higgins v. Medina</u>, 2007 U.S. Dist. LEXIS 73149 *2 (E.D. Cal. October 1, 2007); <u>Flores v. Emerich & Pike</u>, 2007 U.S. Dist. LEXIS 58727 *10-11 (E.D. Cal. July 30, 2007); <u>Dugan v. Kanamu</u>, 2007 U.S. Dist. LEXIS 41920 *7-8 (D. Hawaii

1    June 8, 2007); <u>Single Chip</u>, <u>supra</u>, at 1059.

2        In deciding whether a cause of action from two separate lawsuits is the same,

3    courts will apply the "transaction test." This test requires consideration of four

4    factors: "(1) whether rights or interests established in the prior judgment would be

5    destroyed or impaired by prosecution of the second action; (2) whether substantially

6    the same evidence is presented in the two actions; (3) whether the two suits involve

7    infringement of the same right; and (4) whether the two suits arise out of the same

8    transactional nucleus of facts." <u>See</u>, <u>e.g.</u>, <u>Adams</u>, <u>supra</u>, at 689. "The last of these

9    criteria is the most important." <u>Id.</u> (quoting <u>Costantini v. Trans World Airlines</u>, 681,

10   F.2d 1199, 1202.)

11       As set forth below, the above factors including the each of the criteria

12   identified as part of the transaction test overwhelmingly weigh in favor of

13   Burlington.

14   **A.    Wolfes I And Wolfes II Two Involve The Same Cause of Action**

15       *1.    Nucleus of Facts*

16       Turning to the most important factor first, it is difficult to imagine how

17   Plaintiff could possibly argue that Wolfes I and Wolfes II do not arise out of the

18   same nucleus of facts. <u>First</u>, both matters allege that the same insurance policy is

19   implicated – Burlington Commercial General Liability policy issued to Big Sky

20   covering "the relevant periods of 2004." [Compare ¶ 5 of Exhibit No. 2 v. ¶ 5 of

21   Exhibit No. 5.] <u>Second</u>, both matters allege that Plaintiff was "an officer, director,

22   shareholder and employee" of Big Sky as defined in that policy. <u>Compare</u> ¶ 4 of

23   Exhibit No. 2 v. ¶ 4 of Exhibit No. 5.] <u>Third</u>, both matters allege Big Sky brought

24   suit against Plaintiff on June 27, 2004 and that Leunis filed a First Amended Cross-

25   Complaint against Plaintiff in August 2005. [Compare ¶ 7 of Exhibit No. 2 v. ¶ 8 of

26   Exhibit No. 5.] <u>Fourth</u>, both matters allege that Plaintiff sent letters to Burlington on

27   October 20, 2005, July 20, 2006 and November 18, 2006, demanding that

28   "Burlington provide a defense on behalf of [Plaintiff] and indemnify her with respect

to the complaint and cross complaint." [Compare ¶ 8 of Exhibit No. 2 v. ¶ 10 of Exhibit No. 5.]     Finally, both matters allege that Burlington's denial of these tenders was improper.  [Compare ¶¶ 9-10 of Exhibit No. 2 v. ¶ 11-12 of Exhibit No. 5.]  Indeed, not only are the above core allegations similar, but in many instances they are identical.

### 2.     Impairment of Rights

The claims in both actions require a determination by the court (in Wolfes I) and the jury (in Wolfes II) as to whether Plaintiff is entitled to coverage for the Underlying Action pursuant to the policy issued by Burlington.  Burlington's rights in a judgment declaring that it does not owe Plaintiff a duty to defend or indemnify would clearly be destroyed by a judgment in Wolfes II that it breached the terms and conditions of the policy issued to Plaintiff.  Likewise, the same would be true if the Court ruled in Plaintiff's favor in the Declaratory Relief action, but found that Burlington did not breach the provisions of the policy in Wolfes.  Given the likelihood of inconsistent judgments, again, it is difficult to imagine how this factor does not weigh in favor of dismissal.

### 3.     Substantially The Same Evidence

Plaintiff fares no better with respect to this factor.  As mentioned above, the facts of Wolfes I and Wolfes II are virtually indistinguishable.  The parties in both actions, as mentioned below, are identical and the coverage arguments in each action are the same.  The only additional evidence that might be present in Wolfes II involve whether Burlington conducted a proper investigation of the claim.  Yet, the conclusory nature of these allegations makes it impossible to predict what, if any, evidence Plaintiff intends to rely on in support of this contention.  Regardless, at the very least, the evidence in both Wolfes I and Wolfes II will be "substantially the same."

### 4.     Infringement of the Same Right

While Wolfes I seeks a judicial determination of the parties' rights under the

policy and Wolfes II seeks a judgment that Burlington has violated the terms of the policy, both actions arise out of an alleged infringement of Plaintiff's rights under the policy.

**B.    Wolfes I and Wolfes II Seek Substantially The Same Relief**

In Wolfes I, Plaintiff seeks the following remedies: (1) a judicial declaration that Burlington is contractually obligated under the policy to provide a defense for plaintiff and or indemnify plaintiff as to the complaint and cross-complaint; (2) attorneys' fees and costs incurred in defending the complaint and cross complaint; as well as (3) attorneys' fees and costs incurred in the action against Burlington. [See Exhibit No. 2 at p. 4.]

In Wolfes II, Plaintiff seeks the following remedies: (1) general, special and consequential damages according to proof; (2) attorneys' fees and costs incurred in defending the complaint and cross complaint; (3) attorneys' fees and costs incurred in the action against Burlington; and (4) exemplary damages according to proof.   . [See Exhibit No. 5 at p. 11.]  The nature of the consequential damages sought by Plaintiff, however, are the attorney's fees incurred by her in defense of the Underlying Action.  [See Exhibit No. 5 at ¶ 19.]  As a result, other than punitive damages, the relief sought in Wolfes I and Wolfes II are the same

**C.    Wolfes I And Wolfes II Involve The Exact Same Parties**

The only parties named in the Wolfes I and Wolfes II suits are Jenny Wolfes and The Burlington Insurance Company.  Therefore, this factor, along with each of the factors relied upon by courts in the Ninth Circuit, weigh heavily in favor of dismissal.

///

///

V.    **PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CONSISTS OF NOTHING MORE THAN CONCLUSORY ALLEGATIONS AND SHOULD BE DISMISSED.**

Plaintiff's Second Cause of Action is for Breach of the Implied Covenant of Good Faith and Fair Dealing, i.e. bad faith.  Mere conclusory allegations of an insurer's denial of coverage are not sufficient to support a cause of action for breach of the implied covenant of good faith and fair dealing.  See Opsal v. United Services Auto. Ass'n., 2 Cal.App.4th 1197, 1205 (1991); Careau & Co., et al. v. Security Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1395 (1990); Brandt v. Superior Court, 37 Cal. 3d 813, 819 (1985) (citation omitted); Sawyer v. Bank of America NT&SA, 83 Cal.App.3d 135, 139 (1978).  Allegations which assert a "bad faith" claim against an insurer must show that the conduct of the insurer, whether or not it also constitutes a breach of a consensual contract terms, demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act.  Careau & Co., supra, at 1395.  Indeed, "for there to be a breach of the implied covenant, the failure to bestow benefits must have been under circumstances or for reasons which the law defines as tortious . . . [t]he mere denial of benefits, however, does not demonstrate bad faith." California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 15 (1985) (citations omitted).

Here, Plaintiff has not alleged **any** facts that would indicate Burlington's actions were unreasonable and part of a conscious and deliberate bad act.  Although Plaintiff provide several statements in support of her bad faith claim – by failing to "conduct a complete investigation" in the facts of the claim, by interpreting the provisions of the policy in such a way to deny benefits and by refusing to pay Plaintiff's cost of defense -- these statements are all conclusory.  They do not, for example, demonstrate why Burlington's refusal to provide a defense was

1  unreasonable or why Burlington's investigation was incomplete.  An allegation that

2  says that it merely states it was incomplete cannot be enough.  In short, Plaintiff has

3  failed to provide any facts to support her claim and, therefore, this claim appears to

4  merely duplicate Plaintiff's First Cause of Action for Breach of Contract.  For these

5  reasons, Burlington submits that Plaintiff's Second Cause of Action should be

6  dismissed.

7  **VI.    PLAINTIFF'S THIRD CAUSE FOR INTENTIONAL INFLICTION**

8  **OF EMOTIONAL DISTRESS IS BASED ON INSUFFICIENT**

9  **FACTUAL ALLEGATIONS AND SHOULD ALSO BE DISMISSED.**

10  Plaintiff's Third Cause of Action is for Intentional Infliction of Emotional

11  Distress.  She must plead and prove that Burlington committed acts that were "*so*

12  *extreme as to exceed all bounds of that usually tolerated in a civilized community*."

13  Schlauch v. Hartford Acc. & Indem. Co., (1983) 146 Cal.App.3d 926, 936 (1983)

14  (italics added); Ricard v. Pacific Indem. Co., 132 Cal.App.3d 886, 895 (1982). The

15  term "extreme" has been defined as conduct that goes beyond mere insults,

16  indignities, threats, hurt feelings or bad manners that a reasonable person is expected

17  to endure. C.A.C.I. § 1602.

18  In the context of insurance cases, courts have frequently dismissed claims

19  based on a "denial or delay of insurance benefits as not sufficiently outrageous to

20  state a cause of action for intentional infliction of emotional distress."  Coleman v.

21  Republic Indemn. Ins. Co., 132 Cal.App.4[th] 403, 417; Ricard, supra, at 895 (insurer's

22  wrongful refusal to investigate or process plaintiff's claim did not state a claim for

23  IIED.); Campbell v. Allstate Ins. Cos., 1995 U.S. Dist. LEXIS 21849 * 10-11 (C.D.

24  Cal. 1999); Isaacson v. California Ins. Guar. Ass'n., 44 Cal.3d 775, 788-789 (1988)

25  (where insurer refused to pay settlement in excess of $400,000 and sent letter to

26  plaintiffs' counsel stating that settlement in excess of $500,000 would be

27  unwarranted, a possible policy violation, and breach of good faith, the actions

28  alleged fell short of extreme and outrageous conduct needed to plead an action for

1  intentional infliction of emotional distress); Soto v. Royal Globe Ins. Co., 184

2  Cal.App.3d 420, 432 (1986); Schlauch, supra, at 936 ("The failure to accept an offer

3  of settlement or the violation of statutory duties under [the Insurance Code] does not

4  in itself constitute the type of outrageous conduct which will support a cause of

5  action for intentional infliction of emotional distress")

6       Here, Plaintiff has pled no facts demonstrating that Burlington committed acts

7  that could be considered "extreme" or "outrageous."  Instead, Plaintiff "incorporates

8  by reference" each of the previous allegations having to do with Burlington's alleged

9  denial of benefits under the policy. [See Exhibit No. 5 at ¶ 28.]  In fact, the only

10  factual allegation Plaintiff offers in support of her claim is that Burlington's conduct

11  has forced Plaintiff to incur attorney's fees and costs in connection with the

12  Underlying Action.  [Id. at ¶ 31.]  As the cases mentioned above clearly illustrate,

13  such conduct falls well short of exceeding "all bounds of that usually tolerated in a

14  civilized community."  Therefore, dismissal of Plaintiff's claim for Intentional

15  Infliction of Emotional Distress is warranted as well.

16  **VI.   CALIFORNIA DOES NOT RECOGNIZE CLAIMS FOR NEGLIGENCE**

17       **AGAINST INSURERS AND, THEREFORE, PLAINTIFF'S FOURTH**

18       **CAUSE OF ACTION SHOULD BE DISMISSED.**

19       Plaintiff's Fourth Cause of Action is for Negligent Infliction of Emotional

20  Distress.  The law of negligent infliction of emotional distress in California is

21  premised on two "theories" of recovery: the "bystander" theory and the "direct

22  victim" theory.  The distinction between the "bystander" and "direct victim" cases is

23  found in the source of the duty owed by the defendant to the plaintiff.  The

24  "bystander" cases address "the question of duty in circumstances in which a plaintiff

25  seeks to recover damages as a percipient witness to the injury of another."

26  Christensen v. Superior Court, 54 Cal.3d 868, 884.  In other words, bystander

27  liability is premised upon a defendant's violation of a duty not to negligently cause

28  emotional distress to people who observe conduct which causes harm to another.  By

contrast, the label "direct victim" arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." <u>Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.</u>, 48 Cal. 3d 583, 590 (1989).

It is well established, however, that "[t]he *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence*. [Citation.] The traditional elements of duty, breach of duty, causation, and damages apply. . . ." <u>Id.</u> at 488-489 (Emphasis Added.)  It is equally well established in California that "negligence is not among the theories of recovery generally available against *insurers*...." <u>Sanchez v. Lindsey Morden Claims Services, Inc.</u>, 72 Cal. App. 4th 249, 254 (1999); <u>Conestoga Servs. Corp. v. Exec Risk Indem.</u>, 312 F.3d 976, 980 (9th Cir. 2002); <u>Tento Intl'l. v. State Farm Fire & Cas. Co.</u>, 222 F.3d 660, 664 (9th Cir. 2000); <u>Cecena v. Allstate Ins. Co.</u>, 2007 U.S. Dist. LEXIS 6443 *22 (N.D. Cal. 2007); <u>Aas v. Superior Court</u>, 24 Cal.4th 627, 643 (2000).  Instead, California courts typically allow an award of tort damages against an insurer only when an insured is able to establish some misconduct that goes beyond mere negligence and constitutes a breach of the implied covenant of good faith and fair dealing.  <u>See</u>, <u>e.g.</u>, <u>Aceves v. Allstate Ins. Co.</u>, 68 F. 3d 1160, 1166 (9th Cir. 1995) (stating, "In California, mere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case"); <u>National Life and Accident Ins. Co. v. Edwards</u>, 119 Cal. App. 3d 326, 339 (1981).

In this case, Plaintiff's claim should be dismissed for two reasons.  For starters, as mentioned above, California does not recognize claims for negligence against insurers.  Second, in support of her negligence claim, Plaintiff has not alleged that Burlington owed her a duty or that it breached that duty.  [See Exhibit No. 5 at ¶¶ 34-38.]

## VI.    **CONCLUSION.**

For the foregoing reasons, Defendant The Burlington Insurance Company requests that its Motion to Dismiss be granted.

DATED: November 7,  2007                    Respectfully submitted,
                                            WESTON & McELVAIN LLP


                                            _____
                                                   Richard C. Rey II
                                            Attorneys for Defendant THE
                                            BURLINGTON INSURANCE
                                            COMPANY

*PROOF OF SERVICE*
*Jenny Wolfes v. Burlington Insurance Company*
*USDC, Northern District Case No.C07 04657 JW*

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 888 West Sixth Street, 15th Floor, Los Angeles, California 90017.

On November 7, 2007, I served the foregoing document described as: **DEFENDANT BURLINGTON INSURANCE COMPANY'S NOTICE OF MOTION AND MOTIN TO DISMISS COMPLAINT AS IMPROPRLY DUPLICATIVE; MEMORANDUM OF POINTS AND AUTHORITIES ATTACHED HERETO** on all parties as indicated below:

Gerald Emanuel
HINKLE, JACHIMOWICZ, POINTER & EMANUEL
2007 West Hedding Street, Suite 100
San Jose, CA 95128
Telephone: (408) 246-5500
Facsimile: (408) 246-1051

[X]    by placing the true copies thereof enclosed in sealed envelopes addressed as stated above.

[X]    **BY MAIL** as follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

[_]    BY FACSIMILE    I sent such document from facsimile machine (213) 596-8039 on November 7, 2007. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (213) 596-8039 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed on the attached service list.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **November 7, 2007,** at Los Angeles, California

Patricia De La Cruz

-1-
*SERVICE LIST*
*USDC, Northern District Case No.C07 04657 JW*